Danny Ray ROBERTS, Plaintiff,

v.

CITY OF GENEVA, et al., Defendants.

No. CIV. A. 99–D–638–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 7, 2000.

1202

Johnny B. Davis, Dothan, AL, for Plaintiff.

R. Todd Derrick, Steadman Shealy, Jr., Cobb, Shealy & Crum, PA, Dothan, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the City of Geneva ("the City"), Frankie Lindsey ("Lindsey"), Max Motley ("Motley"), and Tim Barney's ("Barney"), (collectively "Defendants"), Motion for Summary Judgment ("Mot."), together with a supporting Memorandum Brief ("Defs.' Br."), filed on July 27, 2000. On August 22, 2000, Plaintiff Danny Ray Roberts ("Plaintiff") filed a Memorandum In Opposition To Defendants' Motion For Summary Judgment, which the court construes as a Response ("Pl's Resp."). Defendants submitted a Reply on August 30, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to deter-

mine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P. 56; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

Plaintiff resides in Geneva, Alabama. The property upon which Plaintiff resides is owned by Curtis and Mildred Speinger.[1] Plaintiff alleges that in June and July of 1997, the City, Lindsey, as chief of police of the City of Geneva, and police officers Barney and Motley[2] removed the following vehicles from the property where Plaintiff resides:

(a) 1981 Oldsmobile Cutlass;

(b) 1975 Chevrolet Luv Pickup Truck[3];

(c) 1965 Nash Rambler;

(d) 1969 Rambler; and

(e) 1975 Triumph.

(Compl. at ¶ 3.)

Defendants allege that the vehicles in Plaintiff's yard presented a clear risk to the people in the neighborhood due to the possibility of rodents, snakes, and insects, as well as the possibility of entrapment of children in the junk vehicles. (Def. Br. at 3–4; C. Speigner Aff., M. Speigner Aff., Lindsey Aff., Barney Aff., Motley Aff.) Defendants contend that the vehicles were removed to protect the health, safety, and

---

**1.** The Speigners filed affidavits in support of Defendants' Motion. In their affidavits, the Speigners contend that, although they have not commenced formal eviction proceedings, they do not want Plaintiff on their property. They indicate that they support and approve of Defendants' actions, i.e., the removal of Plaintiff's vehicles from their property, upon which Plaintiff resides. (Defs.' Br. at 2–3.)

**2.** Max Motley is now retired. (Defs.' Br. at 1.)

**3.** With regard to the 1997 Chevrolet Luv Pickup, Defendants contend that as of April 10, 2000, the date Plaintiff was deposed, the Chevrolet Luv Pickup was sitting in Plaintiff's yard. (Def. Br. at 2; Danny Roberts' Dep. at 64.1–69.11; 72.8–78.16.)

welfare of the citizens who live in the neighborhood. (Def. Br. at 5; Lindsey Aff.; Barney Aff.; Motley Aff.) Further, Defendants aver that the City and officers acted in accordance with local ordinance 10–69–02 which reads, in part, as follows:

Section 4. *Disposition of wrecked or discarded vehicles.* No person in charge or control of any property within the City of Geneva or it's [sic] police jurisdiction, whether as owner, tenant, occupant, lessee or otherwise, shall allow any partially dismantled, non-operating, wrecked, junked or discarded vehicle to remain on such property for a longer time than *10 Days;* and no person shall leave any such vehicle on any property within the City of Geneva or police jurisdiction for a longer time than *10 Days;* except that this ordinance shall not apply with regard to a vehicle in an enclosed building; a vehicle on the premises of a business enterprise; or a vehicle in an appropriate storage place or depository maintained in a lawful place and manner by the City of Geneva.

Section 5. *Impounding.* The Chief of Police or any member of his department designated by him is hereby authorized to remove or have removed any vehicle left at any place within the City of Geneva or Police jurisdiction which reasonably appears to be in violation of this ordinance or lost, stolen, or unclaimed. Any vehicle so taken up and removed shall be stored in a suitable place provided by the City of Geneva. A permanent record giving the date of the taking of each vehicle, the place where found and taken, and a description of the vehicle shall be kept by the Chief of Police.

(Defs.' Br. at 5; Attach. C of Lindsey Aff.)

Plaintiff contends that the vehicles removed were not hazardous or junk. (Pl.'s Resp. at 6.) Plaintiff claims that each of the vehicles was simply in need of repairs,

and that he was working on making the repairs up until the time Defendants removed them.· (*Id.* at 7.) Plaintiff argues that this was simply another event in a chain of harassment by the City and the Geneva police, dating back to 1980. (*Id.* at 4–7.)

Since their removal, the vehicles have been stored by Ronald Elmore. (Defs.' Br. at 4.) Plaintiff contends that, although he has inquired of the City several times about where the vehicles were located, he did not learn that the vehicles were being stored by Ronald Elmore until Defendants filed their Motion For Summary Judgment. (Pl.'s Resp. at 9.) Plaintiff alleges that his vehicles have been damaged and vandalized while in storage. (Pl.'s Resp. at 8.) Defendants contend that the vehicles have not been damaged, and in fact are in substantially the same condition as they were in when removed from Plaintiff's property. (Defs.' Br. at 4; Elmore Aff.; Lindsey Aff.; Barney Aff.) Defendants claim that the police periodically check on the vehicles to ensure that they are in the same condition as they were when moved, and that the vehicles have been clearly marked to ensure that no damage is done to them. (Defs.' Br. at 4; Lindsey Aff.; Barney Aff.) Defendants contend that Plaintiff is free to retrieve the vehicles at any time so long as he makes the vehicles operable and/or stores them outside the city limits. (Defs.' Br. 4–5.) Defendants claim that, with the exception of the Chevrolet Luv pick-up, Plaintiff has expressed no interest in retrieving the vehicles. (*Id.* at 5.)

As a result of the impoundment of the vehicles, Plaintiff filed a seventeen-count Complaint.[4]

Counts One and Two assert federal constitutional claims as enforced by § 1983. Count One alleges that the City violated

---

4. In an Order entered contemporaneously herewith, the court has dismissed Plaintiff's claims against fictitious defendants, which were contained in Counts Three, Six, Seven, Eight, Nine, Eleven, Twelve, and Fifteen. *See*

*New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997) (noting that there is no provision for fictitious party pleading under federal law).

Plaintiff's Fourth and Fourteenth amendment rights by entering Plaintiff's homestead and converting the previously stated chattels of Plaintiff.

Count Two states that Lindsey, Motley, and Barney, "under color of law," did trespass on Plaintiff's homestead and convert Plaintiff's chattels in violation of Plaintiff's Fourth and Fourteenth amendment rights.

The remaining counts of Plaintiff's Complaint, i.e. Counts 4–17, set forth Alabama state law claims.

Count Four alleges that the City, "acting through its agents" Lindsey, Motley, and Barney, trespassed on Plaintiff's property and converted Plaintiff's chattels. Thus, Count Four is a claim of trespass and conversion against the City.

Count Five alleges that Lindsey, Motley and Barney "did trespass upon [P]laintiff's homestead and convert the previously stated chattels."

Counts Seven and Eight claim that the City conspired with Lindsey, Motley, and Barney, to violate Plaintiff's rights under the United States Constitution and the Alabama Constitution of 1901.

Count Ten alleges that the City "by and through the actions of its police officers and co-conspirators[,] did harass and did negligently and/or wantonly/intentionally inflict emotional distress upon Plaintiff by violating his rights and causing him damages and injuries."

Count Eleven alleges that Lindsey, Motley, and Barney along with the City "did conspire to and did in fact harass and negligently and/or intentionally inflect [sic] emotional distress upon [the] [P]laintiff."

Count Thirteen alleges that the City "through its previously stated unlawful actions[,] violated Plaintiff's rights under Article I Section 6 (due process) and Article I Section 35 (tyranny clause) of the Alabama Constitution . . ."

Count Fourteen alleges that Lindsey, Motley, and Barney "under color of law . . . violated [P]laintiff's rights under Article I section 6 and Article I section 35 of the Alabama State Constitution."

Count Sixteen alleges that the City "allowed and/or purposely damaged the chattels [the said vehicles] of [P]laintiff after their seizure by failing to properly store the chattels." This count further alleges that the City violated § 11–47–116 of the Code of Alabama. Alabama Code § 11–47–116 reads as follows:

(a) All municipalities are hereby authorized to provide by ordinance for the taking up and storing of abandoned and stolen personal property found within the corporate limits or outside the corporate limits but within the police jurisdictions and to sell the same in the manner provided in subsection (b) of this section. A permanent record giving the date of the taking of each piece of such property, the place where found and taken and a description of the property shall be kept. The property so taken shall be stored in a suitable place to protect it from deterioration; provided, that if the property be perishable the same may be sold at once without notice, in which case the proceeds shall be held for a period of six months for the account of the owner and if not called for within that time shall be converted into the general fund.

(b) At least every six months the chief officer of the law enforcement department of each such city or town adopting an ordinance under subsection (a) of this section shall sell at public auction to the highest bidder for cash the property which shall have then been taken up and stored for a period of three months or more. . .

ALA. CODE § 11–47–116 (1975).

Count Seventeen alleges that "[d]efendant Police Officers allowed and/or purposely damaged chattels" of Plaintiff by failing to store them in a suitable place. This count further alleges that Lindsey, Motley, and Barney in failing to protect Plaintiff's chattels violated § 11–47–116 of the Alabama Code.

## DISCUSSION

Plaintiff alleges two constitutional claims arising under § 1983, one against the Lindsey, Motley, and Barney, and the other against the City.[5] These are Plaintiff's only federal law claims. Defendants assert that they are entitled to summary judgment on Plaintiff's claims arising under § 1983, as well as on Plaintiff's state law claims. The court will first address Plaintiff's federal claims and then the state law claims.

## I. Plaintiff's Federal Claims

Lindsey, Motley, and Barney assert that they are entitled to qualified immunity on Plaintiff's § 1983 claims against them in their individual capacities. (*Id.* at 19–24) The City contends that it is entitled to summary judgment on Plaintiff's constitutional claims because there is no evidence establishing a theory of liability under which the City can be held accountable under § 1983. (*Id.* at 24–28.) The court will address each argument in turn. Additionally, the court will *sua sponte* address Plaintiff's claims against the individual officers in their official capacities.

---

**5.** Section 1983 provides that

[e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

**6.** Initially, the court notes that Plaintiff has not specified in his Complaint whether he is suing Lindsey, Motley, and Barney in their individual capacities. Where, as here, a complaint is not clear on this matter, the "course of proceedings" usually will signify the type of liability sought to be imposed. *Kentucky v.*

## A. Plaintiff's § 1983 Claims Against Lindsey, Motley, And Barney In Their Individual Capacities

■ Under § 1983, Plaintiff also seeks to hold Lindsey, Motley, and Barney liable for monetary damages in their individual capacity.[6] Lindsey, Motley, and Barney contend that, in their individual capacities, they are immune from damages under the well-established doctrine of qualified immunity. (Defs.' Br. at 19–24.) The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual

---

*Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Courts considering the "course of proceedings" generally refer to arguments and defenses presented by the parties. *See Fitzgerald v. McDaniel,* 833 F.2d 1516, 1520 (11th Cir.1987) (raising and arguing the defense of qualified immunity suggests that the lawsuit was filed against the defendant in his or her individual capacity).

Here, Defendants have asserted qualified immunity as a defense to Plaintiff's § 1983 claims against Lindsey, Motley, and Barney in their individual capacities, plus their Motion For Summary Judgment focuses on this defense. Additionally, Defendants have not questioned Plaintiff's failure to designate the capacity in which he is suing Lindsey, Motley, and Barney. Thus, the court finds that the "course of proceedings" indicates that Plaintiff's lawsuit is against Lindsey, Motley, and Barney in their individual, as well as official capacities. *Kentucky,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099; *see also Hobbs v. Roberts,* 999 F.2d 1526, 1529 (11th Cir.1993).

capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " [7] *Rich,.* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). If a defendant satisfies this burden, the plaintiff must show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.* At the summary judgment stage, the second prong "itself has two subparts: first, whether the applicable law was clearly established at the time of the governmental action; and second, whether a genuine issue of fact must be resolved to determine if the government official's conduct violated clearly established law." *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir.1994).

■■■ Moreover, in determining whether the applicable law was clearly established at the time of the challenged action, courts must look to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is

doing violates that right"). Absent a controlling and factually on-point case, a plaintiff can overcome qualified immunity only when "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids so "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997) (citing *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

With these principles in mind, the court turns to Plaintiff's two constitutional claims to determine whether Plaintiff's claims survive Lindsey, Motley, and Barney's defense of qualified immunity.

### 1. Plaintiff's Fourth Amendment Claim

■■■ The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. 4; *see also United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir.1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures[.]"). The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Michigan v. Summers,* 452 U.S. 692, 694 n. 2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

■■■ Plaintiff has failed to articulate how he perceives that his Fourth Amendment rights were violated by Lindsey, Motley and Barney's actions. Plaintiff's only reference to the Fourth Amendment is contained in the following sentence: "We are unwilling to Balkanize the rule of qualified immunity for cases involving allegedly unlawful warrant less (sic) searches of innocent third parties' homes in search of fugi-

---

7. None of the Parties have argued that Lindsey, Motley, and Barney were not acting within their discretionary authority when Plaintiff's vehicles were removed from his property. Thus, the court finds that the first element under the qualified immunity analysis is satisfied. *See Godby v. Montgomery Co.*

*Bd. of Educ.,* 996 F.Supp. 1390, 1400 (M.D.Ala.1998) (finding that the determination that an officer was acting within his or her discretionary authority is a "low hurdle" to clear). Therefore, the court need only focus its analysis on the contested second prong.

tives." (Resp. at 24.) For the reasons that follow, the court does not find a connection between the law cited by Plaintiff and the officers' actions in the instant case, such that the officers could be found to have violated clearly established law.

First, the law upon which Plaintiff relies is based upon the illegal search of an individual's home. In the instant case, the officers at no time entered Plaintiff's home. The vehicles that were allegedly in violation of the ordinance, were in clear view from the road. The Supreme Court of the United States in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), held that Fourth amendment protection does not extend to open fields. In determining whether evidence found on defendant's land around his home was the product of an illegal search, the Supreme Court indicated: " ... the special protection accorded by the Fourth Amendment to people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as common law." *Hester,* 265 U.S. at 59, 44 S.Ct. 445. Here, Plaintiff stored the vehicles on the land around his home. The vehicles could be observed by the public from the road. Thus, because the vehicles in question were clearly observable, the court finds that, if Plaintiff is basing his Fourth Amendment claim upon an illegal search, the claim is not well grounded.

Second, Plaintiff may be attempting to bring his claim as an unreasonable Fourth amendment seizure claim. However, he has failed to provide any case law regarding illegal seizure, much less any case law related to these facts. The court, through its independent research, also has not uncovered a binding case with materially similar facts. Thus, absent a controlling and factually on-point case, Plaintiff can overcome qualified immunity only by showing that "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,*

127 F.3d 1416, 1419 (11th Cir.1997) (citing *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). In the instant case, there was an ordinance authorizing the impounding of vehicles reasonably believed to be junked or abandoned. *See* Ordinance § 10–69–02 (Attach.C). Moreover, pursuant to their police powers, officers are authorized to take action believed necessary to protect the health and safety of the community. Thus, based upon this ordinance and the condition of the vehicles on Plaintiff's property, the court finds that Lindsey, Motley, Barney or any reasonable officer could have believed he or she was acting lawfully. Accordingly, without ruling on the appropriateness of the Lindsey, Motley, and Barney's actions, the court finds that their conduct was not so unlawful that it should be "readily apparent" to them that they were violating Plaintiff's rights. *Id.* Further, the court finds that Lindsey, Motley, and Barney are entitled to qualified immunity on Plaintiff's claim that they violated his Fourth Amendment rights.

### 2. Plaintiff's Fourteenth Amendment Claim

■ The Fourteenth amendment provides that no state shall deprive any person of property without due process of law. U.S. CONST. amend. 14. There are two types of Fourteenth amendment due process claims—procedural and substantive. *See McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994). Plaintiff brings a procedural due process claim. Specifically, Plaintiff claims that he was entitled to a hearing prior to Lindsey, Motley, and Barney seizing his vehicles. In defense, Lindsey, Motley, and Barney assert that they are entitled to qualified immunity. For the following reasons, the court finds that Plaintiff has failed to demonstrate the violation of clearly established law and, thus, Lindsey, Motley, and Barney are entitled to qualified immunity.

■ The general rule is that qualified immunity protects government actors, and "only in exceptional cases will government

actors have no shield against claims made against them in their individual capacities." *Lassiter*, 28 F.3d at 1149. The burden is upon Plaintiff to prove that this is one of those exceptional cases. Specifically, the burden is on Plaintiff to demonstrate that Lindsey, Barney and Motley violated clearly established law. *See Lassiter*, 28 F.3d at 1150, n. 3; *see also Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d 1563, 1574 (11th Cir.1992).

First, Plaintiff relies upon the case of *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir.1982), to demonstrate that the law requiring a hearing, prior to towing and impounding a vehicle, is well established. The court finds that the case upon which Plaintiff relies does not support his argument. In *Goichman*, the court held that a city ordinance which provided individuals, who made a written request, a post-seizure hearing within 48 hours satisfied the requirements of due process. 682 F.2d at 1325. Thus, *Goichman* speaks only to post-seizure hearings, not pre-deprivation hearings. Accordingly, the court finds that *Goichman* is inapplicable to the facts of this case.

Moreover, *Goichman*, even if factually on point, cannot clearly establish law for this Circuit. Plaintiff's cited case is not binding precedent. To constitute "clearly established law" for our purposes, the case relied upon must be from the Supreme Court of the United States, the Eleventh Circuit, the former Fifth Circuit, or the Supreme Court of Alabama. *See McMillian v. Johnson*, 88 F.3d 1554, 1565 n. 8 (11th Cir.1996).

Because Plaintiff has failed to demonstrate that Lindsey, Motley, and Barney violated clearly established law, the court finds that Lindsey, Motley, and Barney are entitled to qualified immunity. Accordingly, the court finds that Defendants are entitled to summary judgment on Plaintiff's claims under § 1983 against Lindsey, Motley, and Barney, in their individual capacities.

**B.  Plaintiff's § 1983 Claims Against Lindsey, Motley And Barney In Their Official Capacities** [8]

■ The court finds that Plaintiff's § 1983 claims against the individual Defendants in their official capacities are redundant and, therefore, due to be dismissed. When an officer is sued under § 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby*, 931 F.2d 764, 776 (11th Cir.1991). In *Busby*, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's claims against the defendants in their official capacities. The Eleventh Circuit reasoned that the plaintiff's § 1983 lawsuit against both the City and its officers was redundant and may confuse a jury. *Id.* Accordingly, the court finds that Plaintiff's § 1983 claims against Lindsey, Motley, and Barney in their official capacities are due to be dismissed, because Plaintiff also has brought his § 1983 claims against the City.

**C.  Plaintiff's § 1983 Claims Against The City**

Defendants assert that there is no evidence to support a theory of liability against the City under § 1983 for violation of either the Fourth or Fourteenth amendments. (Defs.' Br. at 24–28.) For the following reasons, the court disagrees.

■ Under § 1983, there is no *respondeat superior* liability. Thus, a municipality may not be sued under § 1983 for the acts of others but, rather, only for its own

---

**8.** Although Plaintiff did not specify that he was suing Lindsey, Motley, and Barney in their official capacities and Defendants did not seek summary judgment on claims against the officers in their official capacities, the court will sua sponte address the merits of such claims.

acts. *See Monell v. Dept. of Social Serv.,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

■ In *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474 (11th Cir.1991), the Eleventh Circuit explained that a plaintiff can establish municipal liability under § 1983 in either one of two ways. First, liability may attach if a plaintiff demonstrates "a widespread practice that, 'although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law.' " *Id.* at 1481 (quoting *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915). Second, a plaintiff can establish a municipality's liability by showing that his or her alleged constitutional injury was caused by a person who "possess[ed] 'final authority to establish municipal policy with respect to the action ordered.' " *Id.* at 1480 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *see also Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994).

In opposing summary judgment, Plaintiff appears to predicate liability under both theories. In his Response, as supported by his Affidavit, Plaintiff argues, first, that there was a well-settled 20–year municipal custom or policy of "harassing" Plaintiff which caused his alleged injuries. (Pl.'s Resp. at 32; Danny Roberts Aff.) Second, he asserts that the failure of the police officers to follow proper procedure indicates a deliberate choice by the municipality not to train, supervise, or discipline its police officers. (Pl.'s Resp. at 31–33.) Thus, the court will address these two theories, and finds that Plaintiff has raised genuine issues of material fact as to his second theory, but not his first.

### 1. A Constitutional Violation Caused By A Well–Settled Custom Or Policy

■ The court finds that Plaintiff has failed to demonstrate that the City had "a widespread practice" resulting in an unofficial, but well-settled, custom or policy of violating individual's rights under either the Fourth or Fourteenth amendments. *Brown,* 923 F.2d at 1481. Plaintiff relies upon his allegations that Geneva police officers have "followed" him and his wife around "at least 20 times a year for the past twenty years" to establish that the City has a policy of violating his Fourth and Fourteenth amendment rights. (Pl.'s Resp. 4–5.) This evidence is not so similar in nature to the actions giving rise to Plaintiff's cause of action, namely the towing and impounding of Plaintiff's chattels without a pre-deprivation hearing, to constitute a "custom" of depriving Plaintiff of his property in violation of the Fourth and Fourteenth amendments.

■ Thus, Plaintiff is left with two incidents, in 1993 and 1994, where Plaintiff was approached by the police for violating the same city ordinance that Plaintiff allegedly violated in the instant case. However, in both of those instances, Plaintiff received a hearing and the City acted pursuant to court order. (Pl.'s Resp. at 2–4; Defs.' Br. at 1.); *see Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (noting that an opportunity for a hearing prior to the deprivation of a property interest is at the root of the Due Process Clause). Thus, these incidents do not appear to violate the Fourth or Fourteenth amendments. Accordingly, the court finds that these two facially lawful incidents fail to show a widespread practice of violating Fourth and Fourteenth amendment rights. *See Church,* 30 F.3d at 1345; *see also Depew v. City of St. Marys, Georgia,* 787 F.2d 1496, 1499 (11th Cir.1986). Because Plaintiff has failed to establish the existence of an essential element on his theory that the City is liable based upon an unconstitution-

al citywide policy or custom, the court finds that Plaintiff cannot sustain his § 1983 claims against the City on this theory of liability.

### 2. A Constitutional Violation Caused By A Final Policymaking Official

■ Construing the evidence in the light most favorable to the nonmoving party, the court finds that Plaintiff has raised sufficient issues of fact as to his theory that the deliberate indifference of the City's final decisionmakers caused the alleged unconstitutional actions. Under this theory of liability, a municipal policy may consist of a single edict or act by a municipal official with final policymaking authority: "Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292; *Brown*, 923 F.2d at 1481 (holding that, if one has final policymaking authority, that person's decisions are essentially the municipality's policy).

Before the City can be liable under § 1983 for the actions of a municipal official, the court must first determine whether any of the parties involved in the action, which resulted in the alleged constitutional violation, are policymakers. In the instant case, the ordinance provides that "[t]he Chief of Police or any member of his department designated by him" is authorized to remove or have removed any vehicle that is in violation of the ordinance. (Defs.' Attach. C.) The ordinance does not provide for any type of administrative review of the police chief's decision regarding the impounding of vehicles which violate the ordinance. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1398–99 (11th Cir.1997) (holding that a city manager was not a final decisionmaker with respect to employment termination decisions because the city manager's decisions were reviewed by the city civil service board); *see also Mandel v. Doe*, 888 F.2d 783, 792–94 (11th Cir.1989) (explaining that a municipal officer has final policymaking authority when his or her decisions are not subject to review, and holding that discretionary review initiated by the municipal official himself does not prevent the official from being a final policymaker). Moreover, Defendants, in making their case that Lindsey was involved in a discretionary function during the times at issue, indicate that he "was responsible for the overall decision regarding wrecked, abandoned, and dangerous vehicles." (Defs.' Br. at 14). Based on these facts, the chief of police appears to have final authority. Thus, the court finds that Lindsey, who was present when Plaintiff's vehicles were removed and when the alleged constitutional violations occurred, could be considered a policymaker for purposes of imposing § 1983 liability upon the City.

Having determined that Lindsey qualifies as a final decisionmaker with regard to the actions at issue, the court must next determine whether Plaintiff has presented sufficient evidence that Lindsey's actions violated either Plaintiff's Fourth or Fourteenth amendment rights. With regard to Plaintiff's Fourteenth Amendment procedural due process claim, the City asserts that the hearings in 1993 and 1994 were sufficient process for the actions taken in 1997. (Defs.' Br. at 29). The City further argues that to require the impoundment of vehicles only by judicial proceeding would be unreasonable and impracticable. (*Id.*) In the instant case, the court disagrees with both of these propositions. First, the fact that Plaintiff on two prior occasions has received notice and a pre-deprivation hearing seems to contradict the City's claim that requiring a judicial proceeding would be "unreasonable and impracticable." Second, the court finds that the hearings in 1993 and 1994 cannot as a matter of law be deemed adequate notice and process for the impounding of Plaintiff's vehicles three years later.

■ In the alternative, the City argues that Plaintiff has not been deprived of his property because he is free to claim it at any time. (*Id.*) The undisputed fact is that

Plaintiff's cars were removed and impounded by the City. The law is well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in terms of the Fourteenth amendment. *Fuentes v. Shevin,* 407 U.S. 67, 84–85, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Thus, the court finds that the City's argument that there was no deprivation and therefore no violation, is without merit.

Finally, with regard to Plaintiff's Fourth amendment search and seizure claim, the City asserts that, pursuant to its police powers, it may summarily impound vehicles to protect the health and safety of their citizens. (*Id.*) The court agrees that states and municipalities have broad authority under their police powers to make policy and take action necessary to promote the health and safety of its people. However, it is well established that the City's police power is not above the Constitution. *See Birmingham v. Monk,* 185 F.2d 859 (5th Cir.1950) (citing a multitude of state and federal cases which have held actions or policies pursuant to police powers invalid when they are volatile of constitutional rights).[9] Here, Plaintiff has alleged that the City's seizure of his vehicles without a pre-deprivation hearing has violated his Fourth and Fourteenth Amendment rights. Thus, the City's assertion that it was acting pursuant to its police powers is not sufficient to entitle the City to summary judgment.

Without ruling upon the merits, the court finds that Plaintiff has raised material fact issues as to whether the City is liable for the alleged constitutional violations of Plaintiff's Fourth and Fourteenth Amendment rights. Accordingly, the court finds that summary judgment is due to be denied on Plaintiff's § 1983 claims against the City on the theory that a final policymaking official of the City ordered the alleged unconstitutional actions.

**9.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

## II. Plaintiff's State Law Claims

Plaintiff has brought numerous state law claims against the City and individual officers Lindsey, Motley, and Barney. Specifically, Plaintiff has alleged trespass (Counts 4 & 5), conversion (Counts 4 & 5), conspiracy (Counts 7 & 8), negligent infliction of emotional distress (Counts 10 & 11), intentional infliction of emotional distress (Counts 10 & 11), violations of the Alabama Constitution (Counts 13 & 14), and violations of Alabama Code § 11–47–116 (Counts 16 & 17). Because different immunity defenses apply, the court will address the claims against the City separately from the claims against officers Lindsey, Motley, and Barney.

### A. Plaintiff's State Law Claims Against The City

To the extent that Plaintiff's state law claims against the City seek to impose liability based upon intentional actions of City employees, the court find that the City is entitled to summary judgment. *See* ALA. CODE § 11–47–190 (1975). By statute, a city's liability is limited to negligence-based claims only. *Id.* Section 11–47–190 reads, in pertinent part, as follows:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty ...

*Id.* Thus, in analyzing Plaintiff's state tort law claims, the court must first determine if Plaintiff has alleged a fact pattern that demonstrates neglect, carelessness or unskillfulness of the City's agents, before the court can address the merits of the tort claim. *See Hawkins v. City of Greenville,* 101 F.Supp.2d 1356, 1365 (M.D.Ala.2000).

### 1. Trespass

■ Defendants claim that trespass is an intentional tort and thus, under § 11–47–190, the City is protected from Plaintiff's claim of trespass. (Defs.' Br. at 10.) The court disagrees. "The intent required as a basis for liability as a trespass is simply an intent to be at the place on the land where the trespass allegedly occurred." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 13, at 73 (5th ed.1984). The intent to trespass could result from the agent's neglect or carelessness. Plaintiff's reference to the fact that the officers believed that they were rightfully on Plaintiff's property could be interpreted as averring "neglect" or "carelessness." (Pl.'s Resp. at 15.) Thus, the court finds that § 11–47–190 does not protect the City from Plaintiff's claim of trespass.

■ In the event that immunity does not apply, the City argues that Plaintiff's claim is without merit. In sum, the essence of Defendants' argument is that, because Plaintiff does not have legal title, he lacks standing to bring a claim of trespass. The court disagrees. The Supreme Court of Alabama lists the elements of trespass as follows: "1) an invasion affecting an interest in the exclusive possession of [the plaintiff's] property; 2) an intentional doing of an act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage to the Res." *Borland v. Sanders Lead Co.,* 369 So.2d 523, 529 (Ala. 1979). To now state the obvious, legal title is not a necessary element of an action for trespass. *See Vasko v. Jardine,* 346 So.2d 962, 963 (Ala.1977). Rather, an action for trespass is based upon disturbance in possession. *See Pigford v. Billingsley,* 38 Ala. App. 28, 84 So.2d 661, 663 (1954). Only when there is a dispute as to possession, does the person with legal title prevail. *See Vasko,* 346 So.2d at 964. In the instant case, whether rightfully or wrongfully, as the City alleges, it is undisputed that Plaintiff was in possession at the time of the alleged trespass. Accordingly, the court finds that Plaintiff has standing to bring an action for trespass. Moreover, the court finds that Plaintiff has presented material issues of fact as to his claim for trespass. Thus, Defendants' Motion For Summary Judgment is due to be denied as to Plaintiff's claim of trespass against the City.

### 2. Conversion

■ Conversion is also an intentional tort. *See Johnson v. Northpointe Apartments,* 744 So.2d 899, 904 (Ala.1999). However, "it is the act of conversion itself that gives a right of action, and not the intent to convert." *Carolina Casualty Ins. Co. v. Tisdale,* 46 Ala.App. 50, 237 So.2d 855, 860 (1970). Thus, Plaintiff's claim of conversion is not barred by § 11–47–190 simply because conversion is classified as an intentional tort. *See Crowe v. City of Athens,* 733 So.2d 447, 451 (Ala.Civ. App.1999). If a claim of conversion is based upon "nonintentional conduct," then it may stand in the face of § 11–47–190. *Id.* Here, however Plaintiff has not asserted, in either his Complaint or Response, that his claim of conversion is based upon the neglect, carelessness, or unskillfulness of the City's agents. Thus, the court finds that Plaintiff's claim of conversion against the City is not permitted under § 11–47–190. Accordingly, the City is entitled to summary judgment on Plaintiff's claim of conversion.

### 3. Intentional Infliction of Emotional Distress & Conspiracy

■ The court finds that Plaintiff's claims of intentional infliction of emotional distress and conspiracy are necessarily based upon intentional conduct. *See Hawkins v. City of Greenville,* 101 F.Supp.2d 1356, 1365 (holding that based upon application of § 11–47–190 claims of wantonness, intentional infliction of emotional distress, and outrage must be dismissed); *Scott v. City of Mountain Brook,* 602 So.2d 893, 894–95 (holding that terms negligence, carelessness, and unskillfulness cannot be said to encompass conspiracy). Thus, as

to these claims, the court finds that summary judgment is due to be granted in favor of the City.

### 4. Negligent Infliction of Emotional Distress

■ Plaintiff also claims negligent infliction of emotional distress. Alabama does not recognize an independent cause of action based upon negligent infliction of emotional distress. *See AALAR, Ltd., Inc. v. Francis,* 716 So.2d 1141, 1144 (citing 5 Alabama cases since 1990 which indicate that negligent infliction of emotional distress is not an independent tort). "Negligently causing emotional distress is not an independent tort in Alabama, but, rather, ... [it is] part and parcel of the traditional tort of negligence." *Id.* Here, Plaintiff has not asserted a claim of negligence in his Complaint. Because Alabama does not recognize negligent infliction of emotional distress as an independent tort and Plaintiff has failed to plead negligence, the court finds that the City is entitled to summary judgment on this claim.

### 5. Article I §§ 6 & 35 of the Alabama Constitution & § 11–47–116 of the Alabama Code

■ Plaintiff has alleged violations of Article I, § 6, and Article I, § 35, of the Alabama Constitution. The Supreme Court of Alabama has held that there is no authority that "recognizes a private right of action for monetary damages based on violations of provisions of the Constitution of Alabama." *Matthews v. Alabama Agri-*

cultural & Mechanical Univ., et al., No. 1981259, 2000 WL 681055, at *5 (Ala. May 26, 2000). Plaintiff seeks compensatory and punitive damages from the City for alleged violations of the Alabama Constitution, but has not cited any authority which provides for a private cause of action for alleged violations. Thus, the court finds that the City is entitled to summary judgment on Plaintiff's claims alleging violations of the Alabama Constitution.

For the same reasons, the court finds that the City is entitled to summary judgment for Plaintiff's claims based on a violation of Alabama Code, § 11–47–116. "A federal court may not read a private cause of action into a state statute absent 'clear and specific evidence' that the Legislature intended to authorize such a cause of action." *Leonard v. Enterprise Rent A Car Co., et al.,* 38 F.Supp.2d 982, 984 (M.D.Ala. 1999) (citing *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791, 795 (11th Cir.1989).) The statute itself contains no language indicating that a private right of action is authorized.[10] Plaintiff does not cite any authority creating a private cause of action for violations of Alabama Code § 11–47–116. Thus, the court finds that the City is entitled to summary judgment on Plaintiff's claims based on violations of § 11–47–116.

### B. Plaintiff's State Law Claims Against Lindsey, Motley, & Barney In Their Individual Capacities

■ Defendants assert that the individual officers are entitled to discretionary

---

10. Alabama Code Section 11–47–116 reads as follows:

(a) All municipalities are hereby authorized to provide by ordinance for the taking up and storing of abandoned and stolen personal property found within the corporate limits or outside the corporate limits but within the police jurisdictions and to sell the same in the manner provided in subsection (b) of this section. A permanent record giving the date of the taking of each piece of such property, the place where found and taken and a description of the property shall be kept. The property so taken shall be stored in a suitable place to protect it from deterioration; provided, that

if the property be perishable the same may be sold at once without notice, in which case the proceeds shall be held for a period of six months for the account of the owner and if not called for within that time shall be converted into the general fund.

(b) At least every six months the chief officer of the law enforcement department of each such city or town adopting an ordinance under subsection (a) of this section shall sell at public auction to the highest bidder for cash the property which shall have then been taken up and stored for a period of three months or more...

Ala. Code § 11–47–116 (1975).

function immunity from state claims pursuant to Alabama Code, § 6-5-338. That code section, in pertinent part, reads as follows:

> Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

ALA. CODE § 6-5-338(a) (1975). If there is no dispute that the officers were on duty at the time of the alleged conduct, as is the case here, the issue is whether the officers were engaged in a discretionary function. If the court determines that the officers were engaged in a discretionary function, then they are entitled to immunity unless their conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998). Discretionary acts are "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and those requiring exercise in judgment and choice [involving] what is just and proper under the circumstances." *Montgomery v. City of Montgomery*, 732 So.2d 305, 310 (Ala.Civ.App.1999) (citations omitted).

■ Defendants contend that Lindsey, Barney, and Motley were engaged in discretionary functions when they entered upon Plaintiff's property and removed the vehicles. (Defs.' Br. at 14.) Defendants assert that Chief of Police Lindsey was responsible for the overall decisions regarding the method with which to handle wrecked, abandoned, and dangerous vehicles. (*Id.*) Indeed, the wording of the city

ordinance, which grants the "Chief of Police or any member of his department designated by him," supports this contention. (Defs' Attach. C) Defendants further aver that Lindsey left the planning of the mechanics involved in seizing and impounding vehicles in violation of the ordinance to officers Barney and Motley. Based upon these uncontested contentions, the court finds that Lindsey, Motley, and Barney were engaged in discretionary acts during the time at issue.[11]

■ Turning to the second inquiry, Plaintiff contends that the actions of the officers were illegal, willful, and malicious, and as such the officers are not entitled to immunity. (Pl.'s Resp. at 17.) Plaintiff alleges his vehicles were not in violation of the ordinance, and that the towing and impounding of his vehicles constituted part of a 20-year pattern of the "Geneva police harassing and following the Plaintiff around." (Pl.'s Resp. at 17.) For the reasons that follow, the court finds that Plaintiff has failed to show the officers acted with malice and that Lindsey, Motley, and Barney are entitled to discretionary function immunity.

The Supreme Court of Alabama has indicated that courts should not employ pure speculation to find ill will or malice. *Couch*, 708 So.2d at 153–54. Here, Plaintiff has alleged multiple incidents of harassment by the police, including allegations that Geneva police officers regularly "followed" Plaintiff and his wife around town, and refused to tell him where the vehicles were being stored. (Pl.'s Resp. at 3–5.) However, Plaintiff has not produced evidence which indicates that Lindsey, Motley or Barney acted with ill will or malice. Plaintiff's allegations against the police department are insufficient to show malice on the part of the individual officers, and the court will not employ pure speculation to find ill will on the part of

---

11. The court notes that Plaintiff does not contest that Lindsey, Motley, and Barney were engaged in discretionary functions during the time at issue. Rather, the basis of Plaintiff's argument is that the officers conduct in carrying out their discretionary acts was so egregious that they are not entitled to immunity. (Pl.'s Resp. at 17.)

Lindsey, Motley, and Barney. Accordingly, the court finds that Lindsey, Motley, and Barney are entitled to discretionary function immunity as to Plaintiff's state law claims of trespass, conversion, conspiracy, and intentional infliction of emotional distress.

Finally, as to Plaintiff's claims of negligent infliction of emotional distress and Plaintiff's claims under the Alabama Constitution and Alabama Code, the court finds that Lindsey, Motley, and Barney are entitled to summary judgment for the same reasons the City is entitled to summary judgment on the same claims. As explained in the preceding section, negligent infliction of emotional distress is not an independent cause of action, and there is no private right of action for violations of the Alabama Constitution or Code § 11–47–116 in Alabama.

### C. Plaintiff's State Law Claims Against Lindsey, Motley, and Barney In Their Official Capacities [12]

██ The court also finds that Plaintiff's state law claims against Lindsey, Motley, and Barney in their official capacities are due to be dismissed. The Supreme Court of the United States has explained that "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citing *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). Plaintiff's state law claims against the officers in their official capacity would in effect impact the City thorough depletion of treasury for damages or by causing the City to revamp the administration of its ordinance. Thus, applying the reasoning of the Supreme Court to municipalities, the court finds that Plaintiff's claims against the officers in their official capacities are effectively claims against the City. Because Plaintiff has alleged the same claims against the City in this action, the court finds that Plaintiff's claims against Lindsey, Motley, and Barney in their official capacities are redundant. Accordingly, the court finds Plaintiff's state law claims against Lindsey, Motley and Barney in their official capacities are due to be dismissed.

### ORDER

For the foregoing reasons, it is hereby CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) Defendants' Motion For Summary Judgment on Plaintiff's Fourth and Fourteenth Amendment claims brought under § 1983 against Lindsey, Motley and Barney in their individual and official capacities be and the same is hereby GRANTED.

(2) Defendants' Motion For Summary Judgment on Plaintiff's Fourth and Fourteenth amendment claims brought against the City under 42 U.S.C. § 1983 (Count 3) be and the same is hereby GRANTED in part and DENIED in part. As detailed herein, Plaintiff may proceed to trial on his § 1983 claims alleging Fourth and Fourteenth amendment violations on the theory that Lindsey, as a final policymaking official of the City, ordered the alleged unconstitutional actions.

(3) Defendants' Motion For Summary Judgment be and the same is hereby GRANTED on Plaintiff's state law claims of conspiracy, intentional infliction of emotional distress and negligent infliction of emotional distress against the City, and on Plaintiff's claims that the City violated Plaintiff's rights secured under the Alabama Constitution of 1901 and the Code of Alabama.

(4) Defendants' Motion For Summary Judgment on Plaintiff's state law claim of

---

12. Again, Plaintiff has not indicated that his state law claims are advanced against the officers in their official capacities. However, the court will address such claims *sua sponte*.

negligent trespass against the City be and the same is hereby DENIED.

(5) Defendants' Motion For Summary Judgment on all Plaintiff's state law claims against Lindsey, Motley and Barney in their individual and official capacities be and the same is hereby GRANTED.